```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
Vamvaship Maritime Ltd.,                      :
                                              :      06 Civ. 1849 (HB)
        Plaintiff,                            :
                                              :      OPINION & ORDER
        -against-                             :
                                              :
Shivnath Rai Harnarain (India) Ltd.,          :
                                              :
        Defendant.                            :
------------------------------------------------------X
```

**Hon. Harold Baer, Jr., District Judge:**

Non-party Little Rose Trading L.L.C. ("Little Rose" or "movant") seeks to vacate an ex parte order of maritime attachment issued by this Court on March 8, 2006. Plaintiff Vamvaship Maritime Ltd. ("Vamvaship") opposes the motion. On April 7, 2006 I held a hearing on this motion in accordance with Rule E(4)(f) of the Supplemental Rules for Certain Admiralty and Maritime Claims ("Supplemental Rules"). For the reasons that follow, Little Rose's motion to vacate the attachment is denied.

## BACKGROUND

The following facts are derived from the parties' submissions in support of and in opposition to this motion. Vamvaship and defendant Shivnath Rai Harnarain (India) Ltd. ("Shivnath") were parties to a maritime charter contract. When a dispute arose under the contract, the parties submitted the matter to arbitration in London. An award was issued in favor of Vamvaship in the amount of $246,445.31. Including interest and other costs, Vamvaship now estimates it is due $352,973.39 from Shivnath. An ex parte order of attachment was issued pursuant to Rule B of the Supplemental Rules on March 8, 2006. On March 16, 2006, the process of maritime attachment was served on several banks, including Wachovia Bank, N.A. ("Wachovia").

On February 3, 2006, Little Rose entered into a purchase and sale contract with Shivnath in which Shivnath agreed to sell a quantity of rice to Little Rose. (Movant's letter dated March 24, 2006, Ex. 2). The contract states that the rice will be shipped between March 20th and April 20th 2006. The contract also states that the "shipment shall

1

be made after receipt of 25 [percent] advance payment in the sellers bank (State Bank of Mysore . . . New Delhi . . .) and balance payment to be remitted . . . within [t]hree . . . banking days in U.S. Dollar [sic.] against fax copy" of certain shipping documents. (Id.)

On March 16, 2006, Little Rose directed Al Fardan Excange Co. ("Al Fardan"), a currency exchange house based in Dubai, to wire a $290,000 "advance payment" to Shivnath. Al Fardan then wired Wachovia to debit Al Fardan's account at Wachovia and transfer $290,000 to "Shivnath c/o Chase Manhattan Bank ("Chase")." (Movant's letter dated March 24, 2006, at 2). When Wachovia received the transfer order, it acted on the writ of attachment and seized the funds. The funds were placed in a "suspense account[,]" where they remain. (Vamvaship's Mem., dated April 3, 2006, at 3).

## DISCUSSION

Little Rose argues that the attachment should be vacated because: 1) Wachovia acted as an "originating" rather than as an "intermediary" bank; 2) Shivnath had no property interest in the attached funds; and 3) equity favors Little Rose.

In Winter Storm Shipping, Ltd. V. TPI, 310 F.3d 263, 278 (2d Cir. 2002), the Second Circuit held that "funds in the hands of an intermediary bank may be attached pursuant to Admiralty Rule B(1)(a)." In Noble Shipping, Inc. v. Euro-Maritime Chartering Ltd., No. 03 Civ. 6039, 2003 WL 23021974 (S.D.N.Y. Dec. 24, 2003), a district court explained international wire transfers as follows:

> [a] customer ("the originator") commences an [electronic funds transfer ("EFT")] by instructing its bank ("the originating bank") to transfer funds to a beneficiary . . . . The beneficiary's bank, because it does not operate in the United States, maintains a U.S. dollar account with an American bank ("the intermediary bank"). The originating bank sends the originator's payment instructions to the intermediary bank, including the name and account number of the intended beneficiary. The intermediary bank executes those instructions by crediting funds into the beneficiary bank's U.S. dollar account at the intermediary bank.

Here, both Wachovia and Chase acted as intermediary banks. Had there been no writ of attachment, Wachovia would have debited the funds from Al Fardan's account at Wachovia and transferred them to Chase. Chase would then have transferred or credited those funds to Shivnath's bank, the State Bank of Mysore. Al Fardan acted as an

2

originating bank by initiating the funds transfer at the behest of Little Rose.[1]  Little Rose attempts to distinguish this case from Winter Storm and its progeny by arguing that the funds rested in Al Fardan's account when they were seized.  However, more accurately, the funds were seized at the instant Wachovia processed Al Fardan's transfer request.  (Vamvaship's Mem. dated April 3, 2006, Ex. A).  Thus, the funds were not simply resting in Al Fardan's account when they were attached.  Rather, an electronic transfer had begun and the funds were en route to Shivnath when they were attached at Wachovia.

Little Rose also argues that Shivnath had no property interest in the funds attached because they were merely "an advance payment on an executory contract." (Movant's letter dated March 24, 2006, at 3).  Thus, Little Rose argues that, to Shivnath, the funds remained a "mere expectancy."  (Id.)  Rule B(1) "provides that a maritime plaintiff may 'attach the defendant's tangible or intangible personal property.'"  Winter Storm, 310 F.3d at 276 (quoting Supplemental Rule B(1)).  "'Rule B . . . permits a plaintiff to attach intangible items, such as debts owed to the defendant.  Such items may be attached even if they have not yet matured or have only partially matured.  Of course, the defendant's entitlement to the credit or interest in the debt must be clear.'"  Id. (quoting Robert M. Jarvis, *An Introduction to Maritime Attachment Practice Under Rule B*, 20 Journal of Maritime Law and Commerce, No. 4 (Oct. 1989) at 530).

A contract that remains executory may nonetheless be binding and enforceable. See Hirschfeld v. I.C. Securities, Inc., 132 A.D.2d 332, 336 (N.Y. App. Div. 1st Dep't. 1987) ("When a breach of an executory contract occurs, the proper measure of damages is the loss of the entire profit as provided in the contract.").  Here, Little Rose commenced performance by tendering advance payment to Shivnath.  The fact that this payment was seized by Shivnath's creditors does not render it a nullity.  The payment was directed to Shivnath according to the terms of a binding agreement entered into by Shivnath and Little Rose.  If Shivnath's performance was contingent under the terms of the purchase and sale contract, it became obligatory when Little Rose rendered its performance in the form of payment.  Thus, Shivnath's interest in the attached funds is more than a "mere expectancy."

---

[1] Little Rose contends that Al Fardan is not a bank, but rather an entity that provides "money exchange and remittance services."  (Movant's letter dated April 11, 2006).  Nonetheless, Al Fardan acted as an originating bank when it wired Wachovia to initiate the funds transfer.

Finally, Little Rose argues that I should void the attachment on equitable grounds. Little Rose asserts that Shivnath has "cancelled" its contract with Little Rose as a result of the attachment. (Movant's letter dated March 24, 2006, Ex. 7). Therefore, Little Rose argues that it has effectively lost its payment to Shivnath and received nothing in return. If Shivnath refuses to perform on the purchase and sale contract or make good on its obligation to Little Rose in some other fashion, Little Rose must proceed against Shivnath. While this course may impose some hardship on Little Rose, it does not provide sufficient reason to vacate an otherwise valid attachment.

## CONCLUSION

For the foregoing reasons, Little Rose's motion to vacate the attachment is DENIED. The Clerk of the Court is directed to close this motion and remove it from my docket.

**SO ORDERED.**

April 10, 2006
New York, New York

_____
U.S.D.J.

4